IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DANIEL LORD,<br><br>        Plaintiff,<br><br>vs.<br><br>MATTHEW FLANAGAN,<br><br>        Defendant. | CV 13–26–BU–DLC-JCL<br><br>ORDER |

This matter comes before the Court on Defendant Matthew Flanagan's Motion to Quash Deposition and Request for Protective Order. The motion is granted in part and denied in part, as set forth below.

I. **Background**

Plaintiff Daniel Lord ("Lord") brings this 42 U.S.C. § 1983 action against detention officer Defendant Matthew Flanagan ("Flanagan"), alleging he was injured while in custody at the Gallatin County Detention Center. At the moment, the parties are embroiled in a dispute over the location of Flanagan's upcoming deposition. This dispute began in early December 2013, when Lord's attorney

wrote to defense counsel asking that he identify dates in January 2014 when Flanagan would be available for a deposition. Defense counsel responded that Flanagan could be made available for a deposition on January 14, 2014, at defense counsel's office in Bozeman, Montana. (Doc. 30-1, at 3). Lord's attorney apparently had no issue with the date provided, but advised defense counsel that he intended on deposing Flanagan at his own law office in Bozeman. (Doc. 30-1, at 2). Defense counsel pointed out in response that "as a matter of professional courtesy and general practice, a deposition of a party who is represented by counsel is taken at the office of the party's attorney." (Doc. 30-1, at 2). Lord's attorney nonetheless indicated he would not agree to deposing Flanagan at defense counsel's Bozeman law office because of "practical concerns". (Doc. 30-1, at 2).

Three days later, on December 16, 2013, Lord served Flanagan with a subpoena for the production of documents and noticed his deposition to take place on January 14, 2014, at the law offices of Lord's attorney in Bozeman. (Doc. 30-2). The subpoena directed Flanagan to produce "each document related in any way to Daniel Lord" and "each document related in any way to your employment at Gallatin County Detention Center." (Doc. 30-2, at 3).

Flanagan has since filed a Motion to Quash Deposition and Request for Protective Order. (Doc. 29). Flanagan asks the Court "to quash the deposition

location" and order that his deposition take place at defense counsel's law office in Bozeman, Montana. Flanagan also moves to quash the subpoena duces tecum on the grounds that it is overly broad and unduly burdensome, seeks the production of duplicative and cumulative material, and fails to comply with the time requirements of Federal Rule of Civil Procedure 34.

II.     **Legal Standard**

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). The court may, for good cause, issue an order "forbidding the disclosure or discovery" or "specifying terms, including time and place, for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A)&(B). The court has broad discretion in deciding "when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). *See also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

II.     **Discussion**

   A.     **Location of Deposition**

As Flanagan recognizes, the Federal Rules of Civil Procedure do not specify where a party's deposition is to take place. As a general rule, "the examining

party may set the place for the deposition of another party wherever he or she wishes subject to the power of the court to grant a protective order under Rule 26(c)(1)(B) designating a different place" 8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2112 (3d ed. 2010). "On a motion the court has a wide discretion in selecting the place of examination." *Id. See also, Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) ("A district court has wide discretion to establish the time and place of depositions.").

Flanagan argues there is good cause for ordering that his deposition be taken at defense counsel's law office because "it is the general and common practice in Montana to take the deposition of a party who is represented by counsel at the office of the party's attorney." (Doc. 30, at 9). As Flanagan explains it, this general practice is "a matter of professional courtesy in order to afford a party the deference of not having to be examined in what would otherwise be considered a hostile location." (Doc. 30, at 9). Flanagan maintains that the "practical concerns" cited by Lord's attorney, which are that he plans on video recording the deposition with equipment that is not portable, are not a legitimate "reason for refusing to extend professional courtesies as to the deposition location." (Doc. 30, at 10). Flanagan maintains that "the refusal to comply with general practice and extend professional courtesies with respect to the location of

a party's deposition without some legitimate and overriding reason for doing so is inexcusable," and so asks the Court to change the location of his deposition to defense counsel's law office.

Courteous or not, there is nothing in the Federal Rules of Civil Procedure to prevent Lord from noticing Flanagan's deposition to take place at the law offices of Lord's own attorney. Nor is there anything in the Rules requiring that a party, out of courtesy, adhere to the general and common practice in a particular district when noticing a deposition. While the Court certainly encourages attorneys to extend professional courtesies to one another during the course of litigation, the Court is not inclined under the present circumstances to order that they do so.

Regardless of whether Lord's "practical concerns" are legitimate, he permissibly noticed Flanagan's deposition for the location of his choosing. The fact that Flanagan would prefer to be deposed in the "less hostile environment" of his own attorney's law office is not, by itself, good cause for changing the location of his upcoming deposition. Flanagan's motion for a protective order under Rule 26(c)(1)(B) changing the location of his deposition is thus denied.

**B.      Subpoena Duces Tecum**

Lord has served Flanagan with a subpoena duces tecum directing him to produce the following documents at his deposition: (1) "each document related in

any way to Daniel Lord," and (2) "each document related in any way to your employment at Gallatin County Detention Center." (Doc. 30-2, at 3). Flanagan moves for a protective order quashing the subpoena on the ground that it seeks the production of duplicative and cumulative material.

Flanagan points out that Lord previously propounded several sets of discovery requests asking him to produce the following: (1) "any and all documents or other evidence that you have or have access to that is related to the facts and circumstances of Daniel Lord the following requests for production;" (2) "a copy of your employment file at the Gallatin County Detention Center;" (3) "any records or documents identified, referenced or in any way related to you answers to the interrogatories above;" (4) "copies of all statements or reports prepared by you or taken from you regarding your interaction with Daniel Lord," and; (5) "a copy of the Gallatin County Sheriff's Office investigation into the incident involving the injury to Daniel Lord's thumb." (Doc. 30, at 6-7). Flanagan states that he has responded to all of these requests for production and produced nearly 400 pages of documents.

Lord does not dispute that his requests for production are essentially duplicative of his subpoena duces tecum. Nor does he dispute that Flanagan has adequately responded to those requests for production. He simply maintains that

he is "only seeking to inspect and use original documents already produced in discovery at the deposition." (Doc. 31, at 1).

But Lord overlooks the fact that documents produced during discovery by a party opponent are deemed authentic. *See e.g. Orr v. Bank of America, NT &amp; SA*, 285 F.3d 764, 777 n. 20 (9th Cir. 2002 (*citing Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 n. 12 (9th Cir. 1996)). Consistent with this general rule, the August 15, 2013, scheduling order provides that "the parties stipulate to the foundation and authenticity of all discovery items produced in pre-trial disclosure and during the course of discovery." (Doc. 18, at 4).

Lord cites no authority for the proposition that a party who has produced presumptively authentic copies of documents in response to discovery requests must also produce the original documents at the party's deposition. Lord would apparently like to review the original documents for purposes of assessing the authenticity of the copies previously produced by Flanagan. But the copies produced by Flanagan are presumptively authentic, and Lord provides no substantive or particular basis for questioning their authenticity. Because Lord's subpoena duces tecum seeks the production of duplicative and cumulative material, Flanagan has shown that there is good cause for issuing a protective

order.[1]

## IV. Conclusion

Based on the foregoing,

IT IS ORDERED that Defendant's Motion to Quash Deposition and for Protective Order is DENIED to the extent it seeks to change the location of Flanagan's upcoming deposition, but GRANTED to the extent it seeks a protective order quashing the subpoena duces tecum. The subpoena duces tecum served on Flanagan is hereby QUASHED.

DATED this 7th day of January, 2014.

                                                                         Jeremiah C. Lynch
                                                                         United States Magistrate Judge

---

[1] Having so concluded, the Court need not consider Flanagan's additional arguments that subpoena is overly broad and unduly burdensome, and fails to comply with the time requirements of Fed. R Civ. P. 34.